EDWARD W. CHADWICK, assignee, *vs.* OLD COLONY RAILROAD COMPANY. ·

OLD COLONY RAILROAD COMPANY *vs.* EDWARD W. CHADWICK, assignee.

Dukes County.    March 8, 1898. — May 20, 1898.

Present: FIELD, C. J., KNOWLTON, MORTON, & LATHROP, JJ.

*Mortgage of Railroad — Transfer to Individual — Appeal from Decree of Court of Insolvency — Equity — Statute.*

A railroad company, pursuant to St. 1874, c. 372, § 57, (Pub. Sts. c. 112, § 80,) gave its negotiable promissory note to a connecting railroad company, secured by a mortgage on its property and franchises, made to two persons as trustees for the promisee, containing a power to the mortgagees to sell the property and franchises at auction for a breach of the condition of the mortgage. Subsequently, the mortgagees and the promisee entered into an agreement with A., a natural person, that upon certain payments made by him from time to time they would transfer the note and assign the mortgage to him, and until the final payment they should hold the note and mortgage and enforce the same for his benefit. A., after making two partial payments under the agreement, became insolvent, and his assignee in insolvency brought an action against the original promisee to recover back the money paid to it. *Held,* that the action could not be maintained.

A railroad company which was, pursuant to St. 1874, c. 372, § 57, (Pub. Sts. c. 112, § 80,) the holder of a mortgage of the property and franchises of another railroad company, entered into an agreement with A., a natural person, upon the payment of a certain sum by him, to assign and transfer to him the mortgage and the note secured thereby. A., having paid a portion of the sum, became

insolvent, and upon the petition of the mortgagee the Court of Insolvency directed a sale of the mortgaged property and franchises, and authorized the mortgagee to prove its claim as a creditor for any balance of the debt, and the assignee appealed to the Superior Court, and, on the affirmation of the decree, to this court. *Held,* that the proper remedy was by an application to this court under Pub. Sts. c. 157, § 15; that the Superior Court had no jurisdiction, and that the appeal should be dismissed.

KNOWLTON, J. The first of these actions is brought to recover the sum of ten thousand dollars, with interest, paid by Joseph M. Wardwell to the defendant. Wardwell is an insolvent debtor, and the plaintiff is his assignee. The payment was made under an agreement whereby Wardwell became the purchaser from the defendant of a note given by the Martha's Vineyard Railroad Company to the defendant, secured by a mortgage on the property and franchises of this railroad company. The note and mortgage were given in accordance with the provisions of St. 1874, c. 372, § 57, which authorizes a railroad corporation to aid in the construction of any " connecting railroad within the limits of this Commonwealth, whether connected by railroad or steamboat lines, by subscribing for shares of stock in such corporation, or by taking its notes or bonds, to be secured by mortgage or otherwise, as the parties may agree." There is no dispute that the Martha's Vineyard Railroad Company was connected with the Old Colony Railroad Company by a steamboat line, and that the Old Colony Railroad Company was authorized by the statute to aid in the construction of the railroad of the other corporation to the amount of the note, which was for thirty-six thousand dollars, payable in ten years after date, with interest semiannually, at seven per cent per annum, and that it furnished money to that amount for that purpose. The only questions raised in regard to this transaction are as to the form of the note and the form of the mortgage, the note being in terms negotiable, and the mortgage containing a power to the mortgagees to sell the property and franchises at auction for a breach of the condition of the mortgage. The mortgage was made to two individuals as trustees for the defendant.

On January 18, 1890, more than fifteen years after the mortgage was given, the defendant entered into an agreement with Wardwell, in consideration of five thousand dollars paid by him

on that day, and five thousand dollars more to be paid on May 19 of the same year, and twenty-six thousand dollars to be paid on January 1, 1895, with interest at five per cent, to transfer and deliver the note to him or to such persons as he might in writing request; and the trustees agreed in the same writing that, upon the transfer and delivery of the note, they would assign the mortgage to the person to whom the note was transferred and delivered. It was also agreed that until the payments should all be made the defendant should hold the note, and the trustees should hold the mortgage and enforce it for his benefit in such manner as he might in writing request. Wardwell made the second payment of five thousand dollars, but failed to pay the balance. To recover the sum of ten thousand dollars made up of these two payments, and also the interest, the plaintiff brings this suit, contending that the agreement was illegal and void. His contention is, in substance, that such a mortgage as the statute authorizes could not give a title to the road that could pass by a foreclosure or otherwise to the hands of any natural person, or to any railroad company except the one which aided in the construction by taking the notes or bonds.

As a part of the history of the case it appears that the trustees afterwards held the mortgage for Wardwell's benefit until May, 1892, when they foreclosed it by a sale under the power to the defendant. The defendant then conveyed the property and franchises acquired by the deed from the trustees under the power to Wardwell, and Wardwell gave a mortgage back to the defendant to secure the unpaid balance that he owed under the original agreement. All this was done by agreement with Wardwell or at his request, Wardwell having been appointed by the trustees superintendent and general manager of the railroad from the date of the first agreement with him, and having acted as such until the time of the foreclosure. On October 21, 1895, Wardwell was adjudged an insolvent debtor on his own petition, and he then owed the defendant under his agreement twenty-six thousand dollars, and interest thereon for nearly three years.

The second of these cases is an appeal from a decree of the Court of Insolvency directing a sale of the mortgaged property and franchises on the petition of the defendant in the first case,

and authorizing it to prove its claim as a creditor for any balance of the debt. The appeal was taken by the assignee to the Superior Court, and upon an affirmation of the decree by that court, he appealed to this court. In these proceedings it is clear that the appellant has mistaken his remedy, as the statute does not provide for an appeal from the Court of Insolvency to the Superior Court in a case of this kind, and the Superior Court has no jurisdiction. *Woodward* v. *Spurr*, 138 Mass. 592. The remedy for an erroneous decision by the Court of Insolvency upon such a question is by an application to this court under the Pub. Sts. c. 157, § 15. The appeal must be dismissed.

The questions raised in the action at common law involve a consideration of the rights of mortgagees of railroads. Our statutes authorize railroad corporations to mortgage railroads in certain cases, but they do not particularly define the rights of the mortgagees. Pub. Sts. c. 112, §§ 62–80. The general language used implies that their rights are like those of mortgagees of other kinds of property, except so far as they are affected by the provisions of the statutes for the management or use of the property.

It has sometimes been contended that the franchises of a corporation cannot be conveyed by mortgage in connection with its property. It is true that the franchise to be a corporation is not assignable, or in any way transferable. The distinction between the franchise to be a corporation, and the franchise to use the corporate property for the purposes for which the corporation was organized, was pointed out by Mr. Justice Curtis in *Hall* v. *Sullivan Railroad*, 21 Law Rep. 138, (2 Redf. Am. Ry. Cas. 621,) and has been recognized many times by courts of high authority. In *Memphis & Little Rock Railroad* v. *Railroad Commissioners*, 112 U. S. 609, 619, the court says: "The franchise of being a corporation need not be implied as necessary to secure to the mortgage bondholders, or the purchasers at a foreclosure sale, the substantial rights intended to be secured. They acquire the ownership of the railroad, and the property incident to it, and the franchise of maintaining and operating it as such; and the corporate existence is not essential to its use and enjoyment. All the franchises necessary or important to the beneficial use of the railroad could as well be exercised by natural

persons.   The essential properties of corporate existence are
quite distinct from the franchises of the corporation." In the
opinion in *New Orleans, Spanish Fort, & Lake Railroad* v. *Dela-
more*, 114 U. S. 501, 509, is this language: "The authority to
mortgage the franchises of a railroad company necessarily im-
plies the power to bring the franchises so mortgaged to sale, and
to transfer them with the corporeal property of the company to
the purchaser.   It could not be held that, when a mortgage
on a railroad and its franchises was authorized by law, the at-
tempt of the mortgagor to enforce the mortgage would destroy
the main value of the property by the destruction of its fran-
chises."   In *Bank of Middlebury* v. *Edgerton*, 30 Vt. 182, 190,
the court says: "The right to build, own, manage, and run a
railroad, and take the tolls thereon is not of necessity of a cor-
porate character or dependent upon corporate rights.   It may
belong to and be enjoyed by natural persons, and there is nothing
in its nature inconsistent with its being assignable."   A similar
doctrine has been stated or recognized in many other cases.   See
*Morgan* v. *Louisiana*, 93 U. S. 217, 223; *Trask* v. *Maguire*, 18
Wall. 391, 409; *Chesapeake & Ohio Railway* v. *Miller*, 114 U. S.
176; *Jackson* v. *Ludeling*, 21 Wall. 616; *Jackson* v. *Ludeling*,
99 U. S. 513; *State* v. *Sherman*, 22 Ohio St. 411, 428; *Meyer*
v. *Johnston*, 53 Ala. 237, 327; *Chaffe* v. *Ludeling*, 27 La. An.
607; *Willink* v. *Morris Canal & Banking Co.* 3 Green Ch. 377.
So far as we are aware, the cases bearing upon the subjects all
hold that a mortgage of a railroad and other property of a rail-
road corporation includes the franchise to use the property for
the purposes for which it is held by the corporation.   This right
will pass to a purchaser at a foreclosure sale, whether the sale
is to a corporation or to an individual.   A mortgage of prop-
erty necessarily implies the right in the mortgagee to make the
property available.   This may be either by a sale or by use.
There is no good reason why the right to sell should be re-
stricted to cases in which an existing railroad corporation is
willing to become the purchaser.   With such a restriction a
mortgage on the property and franchises of a railroad ordinarily
could only be made available through an actual use by the mort-
gagee, or through a contract under the Pub. Sts. c. 112, § 66,
with the mortgagor.

By the Pub. Sts. c. 112, § 70, the Supreme Judicial Court is given jurisdiction " of all questions arising out of railroad mortgages." In *Troy & Greenfield Railroad* v. *Commonwealth*, 127 Mass. 43, it is said that chapter 140 of the General Statutes (Pub. Sts. c. 181) relates only to mortgages of real estate, and it is implied that the only jurisdiction to foreclose mortgages upon railroads is in equity. We think there is no doubt that a court of equity under our statutes has jurisdiction over suits to foreclose mortgages of railroads, and in such cases may order a sale of the property and franchises covered by the mortgage.

The right to foreclose such a mortgage by a sale, and the right of an individual, as well as a corporation, to purchase at the sale and to transfer to others the title which he acquires, is recognized by the St. 1886, c. 142, § 1, which is as follows: " A purchaser of a railroad at a sale under a valid foreclosure of a legal mortgage thereof, and his grantee and successors in title, shall be subject to all and the same duties, liabilities, restrictions, and other provisions respecting such railroad, or arising from the construction, maintenance, and operation thereof; and have all and the same powers and rights relating to said railroad, and the construction, maintenance, and operation thereof, which the corporation by which said mortgage was made was subject to, and had at the time of said sale." This statute is declaratory of the law as it exists without legislation in other jurisdictions, and as doubtless it would have been held to be in this Commonwealth upon general principles before the enactment of the statute. It follows that the agreement under which the payments were made by Wardwell was not contrary to public policy, and it gave him equitable rights in the mortgaged property and franchises that furnish a valuable consideration for his payments. It also follows that the original mortgage was not illegal in that it was made to secure a negotiable promissory note.

The effect of a power of sale inserted in a mortgage of a railroad it is not necessary in this suit to determine, inasmuch as the validity of the payments made by Wardwell under the agreement does not depend upon it. Powers of sale in mortgages have been recognized by the courts and by the statutes in this Commonwealth for many years, and if they are not objec-

tionable in terms, we see no reason why they should not be given effect in mortgages of railroads as well as of other property.

The fact that St. 1874, c. 372, § 57, (Pub. Sts. c. 112, § 80,) in authorizing the making of mortgages of railroads, does not expressly mention their franchises, is immaterial. The franchise to use the railroad and its appurtenances goes with the railroad by implication when an entire railroad is conveyed. That a mortgage can be made originally only to a connecting railroad under this statute does not indicate that the mortgagee can make it available only by operating the railroad, and that the franchises cannot be used by a purchaser. So to hold would put a limitation upon the mortgage, for which there is no warrant in the statute.

The grounds upon which the plaintiff seeks to recover are untenable.

*Judgment for the defendant, and appeal dismissed.*

*J. H. Benton, Jr.*, for the railroad company.

*W. H. Cobb & L. LeB. Holmes*, for Chadwick.